IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | Criminal No. 3:12CR170–HEH |
| | ) | |
| MICHAEL F. HARRIS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
(Granting Defendant's Renewed Motion for Judgment of Acquittal on Counts Three
and Four Due to Lack of Venue)

This matter is before the Court on Defendant's Renewed Motion for Judgment of Acquittal on Counts Three and Four Due to Lack of Venue (ECF No. 70), filed on March 6, 2013. Both parties have filed detailed memoranda supporting their respective positions. For the reasons stated below, the Motion will be granted.

### I. BACKGROUND

On March 4, 2013, a jury convicted Michael F. Harris ("Harris") of two counts of securities fraud, in violation of 15 U.S.C. § 77q(a); three counts of wire fraud, in violation of 18 U.S.C. § 1343; and one count of mail fraud, in violation of 18 U.S.C. § 1341. Each of these counts stems from the fraudulent scheme outlined below.

Harris was the President and majority shareholder of M.F. Harris Research, Inc. ("MFH"). Harris purportedly formed MFH to develop a treatment for HIV/AIDS, using hyperbaric chambers to inhibit the virus.

Over a six-year period, ending in July 2011, Harris repeatedly made misrepresentations to potential investors to induce them to purchase MFH stock. Harris

told investors that he would use the solicited funds to develop patents and to conduct human trials. While Harris represented to his investors that he was using their funds for legitimate purposes, he diverted the majority of the funds to his own use.

Harris's Motion for Judgment of Acquittal only concerns the securities fraud violations in Counts Three and Four. Count Three pertains to conduct beginning in October 2008. Specifically, the evidence revealed that Harris first informed Katie Ritter ("Ritter") about MFH and its work in October 2008. Three months later, Harris met with Ritter in Maryland to show her a PowerPoint presentation about MFH. During these conversations, Harris made material false representations and omissions, which caused Ritter to invest $5,000 with MFH in December 2008. In November 2010, Harris sent an invitation to existing MFH shareholders, including Ritter, requesting their attendance at a shareholders meeting in McLean, Virginia. Ritter received the mailing and attended the shareholders meeting. At the November 2010 shareholders meeting, Harris made further misrepresentations about the status of the patents and the way investor funds were being used.

Count Four addresses similar conduct affecting a second victim. In February 2009, Harris made material false representations and omissions, which induced Russell Carrier ("Carrier") to purchase $10,000 of MFH stock by personal check. Carrier later received an invitation to the November 2010 shareholders meeting, which he subsequently attended.

## II. DISCUSSION

Harris contends that in light of *United States v. Jefferson*, 674 F.3d 332 (4th Cir.

2012), this Court must set aside his securities fraud convictions for Counts Three and Four for lack of venue. His analysis begins with the established principle that "venue lies only where the essential conduct elements of the offense took place . . ." *Jefferson*, 674 F.3d at 365, though he does not specifically identify the essential conduct elements of the offense. Harris characterizes the core conduct as the crime's "actus reus." He argues that because the essence of the offense is the sale of a security, all critical conduct elements—although imprecisely defined—must occur prior to or during the offer or sale. Accordingly, Harris argues, no post-sale activities can be used to establish venue for § 77q(a). He concludes that the Government, having only proved that post-sale lulling efforts occurred in the Eastern District of Virginia, has failed to establish that venue was proper in this District.

The Government advances two arguments in response. The Government first argues that Harris waived his venue challenge by failing to raise the issue before trial. With regard to the merits of the venue challenge, the Government contends that securities fraud, as codified in § 77q(a), constitutes a continuing offense for venue purposes and that subsequent lulling activities are an essential conduct element of the offense.

Based on the analysis that follows, the Court acknowledges that for venue purposes § 77q(a) is a continuing offense with respect to its core elements. In other words, the transactional aspects of the sale may span several judicial districts, each having venue over the offense. Post-sale conduct, however, does not qualify as essential conduct of the offense for the simple reason that the crime has been completed. Accordingly, the Court will set aside his convictions for Counts Three and Four.

3

## A. Harris Has Not Waived Venue

The Fourth Circuit has stated that "[b]ecause proper venue is a constitutional right, waivers of venue rights through failure to object should not be readily inferred." *United States v. Stewart*, 256 F.3d 231, 238 (4th Cir. 2001). "Accordingly, if an indictment properly alleges venue, but the proof at trial fails to support the venue allegation, an objection to venue can be raised at the close of the evidence." *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004) (citation omitted). "When, however, the asserted venue defect is apparent on the face of the indictment a defendant does waive any objection if he fails to object prior to trial." *Id.* (internal quotation marks and citation omitted).

The central question is whether the alleged venue deficiency—the reliance solely on post-sale conduct to establish proper venue for Counts Three and Four—was apparent on the face of the Indictment (ECF No. 3). The Government contends that for each of those counts, the Indictment only made reference to a single specific instance of conduct in the Eastern District of Virginia—the shareholders meeting in McLean, Virginia.[1] This

---

[1] The specific allegation for Count Three of the Indictment states:

> On or about November 1, 2010, HARRIS caused to be delivered via United States mail an invitation to existing MFH shareholders requesting their attendance at an annual shareholders meeting in McLean, Virginia. K.R. received that mailing and travelled in interstate commerce to the Annual Shareholders Meeting, which was held at The Ritz-Carlton Hotel in McLean, Virginia, on or about November 20, 2010. HARRIS held this meeting with the intent to continue the scheme to defraud by attempting to lull K.R. and other investors into believing investor funds had been used to advance MFH corporate purposes, to mislead K.R. and other investors into believing that MFH owned the patent on the MFH treatment, and to maintain a good relationship with K.R. and other investors in order to influence their inaction with respect to their investment.

specific reference, the Government argues, made perfectly clear that it would be relying solely on this post-sale lulling conduct to establish venue in the Eastern District of Virginia. Harris counters that the Indictment's general allegation that he committed fraud in the offer or sale of securities within the Eastern District of Virginia precluded him from raising the objection prior to trial. Harris maintains that it was not entirely clear from the face of the Indictment what additional facts the Government would rely on to establish venue.[2] Harris argues that only at trial did it become clear that the Government would establish venue solely through his post-sale conduct.

In response, the Government asserts that despite the general venue language in the Indictment, the specific conduct allegations, coupled with extrinsic discovery, gave Harris notice of the precise conduct on which venue was premised. The Government notes that not only did the Indictment specifically allege that the sale in Count Three took place in Maryland, but also points out that it made only one specific allegation of conduct occurring in the Eastern District of Virginia—the November 2010 shareholders meeting.

---

(Indictment at 10.) Count Four contains a nearly identical allegation. (*See* Indictment at 11–12.)
[2] The general allegation for Count Three of the Indictment states:

> Beginning at some point in October 2008 and continuing through on or about November 20, 2010, within the Eastern District of Virginia and elsewhere, defendant MICHAEL F. HARRIS, willfully and knowingly, in the offer and sale of securities, that is investments in M.F. HARRIS RESEARCH, INC., by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly: (a) employed a device, scheme, and artifice to defraud; (b) obtained money by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and, (c) engaged in transactions, practices, and courses of business which operated or would have operated as a fraud and deceit upon investors . . . .

(Indictment at 9.) Count Four contains a nearly identical allegation. (*See* Indictment at 11.)

Both sides offer well-reasoned arguments. However, given the Fourth Circuit's admonition that "waivers of venue rights through failure to object should not be readily inferred," this Court will err on the side of caution and proceed to the merits. Here, the Indictment contains both general and specific allegations of conduct occurring in the Eastern District of Virginia. Admittedly, the Indictment suggests that venue might be established only by post-sale conduct, but the general allegation creates ambiguity as to whether the Government intended to show that other conduct integral to the sale occurred in the Eastern District of Virginia. This ambiguity supports the conclusion that the alleged venue defect was not apparent on the face of the Indictment. Thus, this Court finds that Harris has not waived his objection to venue for Counts Three and Four.

### B. Determining Proper Venue For § 77q(a)

#### 1. Framework for Venue Analysis

The Constitution and Rule 18 of the Federal Rules of Criminal Procedure establish the parameters for determining proper venue. Article III requires that all criminal trials "be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl. 3. The Sixth Amendment contains a similar guarantee: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Rule 18 provides that "unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18.

Highlighting the Supreme Court's restrictive approach to the venue question, the Fourth Circuit has stated that "venue must be narrowly construed." *Jefferson*, 674 F.3d at 365 (citing *United States v. Johnson*, 323 U.S. 273, 276 (1944)). Congress can specifically provide for venue in the statute defining the offense, but where it has not done so, "venue lies only where the *essential conduct elements* of the offense took place." *Id.* (emphasis added).

"When a crime consists of a single, non-continuing act, the proper venue is clear: The crime is committed in the district where the act is performed." *United States v. Ramirez*, 420 F.3d 134, 139 (2d Cir. 2005) (internal quotation marks and citation omitted). However, "where the acts constituting the crime and the nature of the crime charged implicate more than one location, . . . venue is properly laid in any of the districts where an essential conduct element of the crime took place." *Id.* (internal quotation marks and citation omitted). This rule has been codified in 18 U.S.C. § 3237(a), which provides:

> Except as otherwise expressly provided by enactment of Congress, any offense . . . begun in one district and completed in another or committed in more than one district may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

7

Thus, under § 3237(a), "jurisdiction over the prosecution of a continuing offense lies in any district in which any portion of the offense occurred." *United States v. Barfield*, 969 F.2d 1554, 1557 (4th Cir. 1992).

### 2. Section 77q(a) is a Continuing Offense for Venue Purposes

Harris is charged under 15 U.S.C. § 77q(a), which contains no specific venue provision.[3] Accordingly, § 3237(a) will apply if § 77q(a) qualifies as a continuing offense. Typically, courts must examine the essential conduct elements to determine whether an offense is continuing for venue purposes. However, the second paragraph of § 3237(a) specifies that certain types of offenses—those involving the use of the mails—are "*per se* continuing." *Ramirez*, 420 F.3d at 139 n.4. Because the violations of § 77q(a) alleged in Counts Three and Four involve the use of the mails, these offenses are *per se* continuing for venue purposes.

### 3. Defining a Continuing Offense in the Venue Context

The Government contends that "the sole question for the court to consider is whether the lulling conduct following the sale of securities as alleged in the indictment

---

[3] 15 U.S.C. § 77q(a) provides:

> (a) It shall be unlawful for any person in the offer or sale of any securities . . . by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

8

could be considered part of a 'scheme to defraud' under 15 U.S.C. § 77q(a)." (Resp. to Def.'s Mot. for J. of Acquittal at 10, ECF No. 74.) The question actually has two components: (1) what is meant by a continuing offense in the context of venue, and (2) is post-sale conduct, such as lulling, an essential conduct element of the continuing offense defined in § 77q(a) and thus included in that definition?

In determining the meaning of a continuing offense in the venue context, the language of § 3237(a) is instructive. The statute defines a continuing offense as one that begins in one district and is completed in another or that can be committed in multiple districts. *See United States v. Stinson*, 647 F.3d 1196, 1204 (9th Cir. 2011). Continuing offenses also exist in the context of statutes of limitations, but that is a concept distinct from venue. A continuing offense in the limitations context is one involving a prolonged course of conduct that is not completed until the conduct has run its course. *See United States v. De La Mata*, 266 F.3d 1275, 1288 (11th Cir. 2001) ("[a] continuing offense is one which . . . continues to be perpetrated over time"); *United States v. Harris*, No. 3:12CR170, 2013 U.S. Dist. LEXIS 11892, at *16–17 (E.D. Va. Jan. 29, 2013). In the limitations context, the issue is whether the crime is completed at some statutorily designated point in time. There the focus is temporal.

On the other hand, in the venue context, a continuing offense is one encompassing several judicial districts. At its core, the concept of a continuing offense for venue purposes is concerned with the geographic locations where essential conduct elements

were performed.[4] *See United States v. Reitmeyer*, 356 F.3d 1313, 1323 (10th Cir. 2004). These concepts serve distinct offices—statutes of limitations determine if and when charges may be brought, whereas venue rules restrict where charges may be brought.[5]

Under § 3237(a), the Government can only rely on core events, namely acts that begin, continue, or complete the offense, to establish venue. The Government contends, however, that certain conduct occurring after a continuing offense has been completed can be used to establish venue. Indeed, "a crime can be both complete and continuing for purposes of venue analysis." *United States v. Salinas*, 373 F.3d 161, 168 (1st Cir 2004); *see also United States v. Canal Barge Co.*, 631 F.3d 347, 352 (6th Cir. 2011). "For example, a wrongdoer has completed the crime of kidnaping sufficiently to ground a conviction upon the event of abduction. If, however, the wrongdoer travels with his victim from state to state, venue will lie in any district along the way." *Salinas*, 373 F.3d at 168 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281 (1999) (noting that kidnaping is a crime which, once begun, does not end until the victim is free)). However, not all continuing offenses persist past the point of completion of the essential elements.

### 4. Post-Sale Conduct Cannot be an Essential Conduct Element of § 77q(a)

As *Salinas* notes, not all crimes "fit[] within the specialized confines of the

---

[4] There is a temporal constraint in the venue context, but the focus is on where the elements were performed. *See United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1188 (2d Cir. 1989) ("[V]enue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense and not part of the offense."); *United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir. 1999) ("[N]either the Constitution nor [the criminal statute at issue] permits venue in a location in which the defendant happens to be after the crime was completed.").

[5] The Government devotes considerable attention to the fact that different analytical approaches are used to determine whether an offense is continuing in the limitations context versus the venue context. As the Court has already shown, the true distinction is between the different meanings of the term in those overlapping contexts.

'complete yet continuing' rubric." *Id.* The Government argues that § 77q(a) falls into this category. Consistent with its prior statute of limitations analysis for § 77q(a) and for the reasons outlined below, this Court finds that the offense defined in § 77q(a) does not continue past the point of completion of a sale. *Harris*, 2013 U.S. Dist. LEXIS 11892, at *24–26 (holding § 77q(a) only proscribes conduct up to and including the sale and does not cover post-sale conduct).

Relying primarily on the Second Circuit's reasoning in *United States v. Cashin*, 281 F.2d 669 (2d Cir. 1960), the Government asserts that "for the purposes of determining venue under 15 U.S.C. § 77q(a), the essential [conduct element] is the scheme to defraud itself." (Resp. to Def.'s Mot. for J. of Acquittal at 14.) The Government "submits that [the defendant's post-sale] lulling conduct was part of the . . . scheme to defraud."[6] (*Id.* at 10.) Thus, concludes the Government, Harris's lulling efforts were an integral part of the fraudulent securities transactions and hence are sufficient to establish venue in the Eastern District of Virginia.

The Government's position is problematic for four reasons. First, the inclusion of specific venue provisions in other securities regulations does not require this Court to read a parallel venue provision into § 77q(a). Second, the Government's analysis is inconsistent with the common understanding of a complete yet continuing offense. Third, the Government's reasoning runs counter to Fourth Circuit precedent determining the proper venue for wire and mail fraud. Fourth, it directly contradicts the reasoning of

---

[6] Implicitly, the Government argues that the prohibited conduct was completed at the time of the sale and then continued in the form of post-sale lulling efforts.

this Court's prior ruling that in the limitations context, § 77q(a) only criminalizes conduct up to and including the sale of a security.

### a. The absence of a specific venue provision does not require this Court to import one from other securities regulations

Although § 77q(a) contains no venue provision, the Government contends that the venue analysis for § 77q(a) should be done in such a way that it achieves harmony with the venue provisions of other federal securities laws. (Resp. to Def.'s Mot. for J. of Acquittal at 12.) Building on a misinterpretation in *Cashin*, the Government concludes that the goal of conformity between securities regulations requires this Court to find that post-sale acts in furtherance of the scheme to defraud suffice to establish venue.

In *Cashin*, the Second Circuit reasoned that although the Securities Act contained no venue provision, it was appropriate to construe venue broadly to "achieve harmony with the specific venue provisions under" other securities laws allowing for charges to be brought in any district in which any act constituting the violation occurred.[7] *Id.* at 674– 75 ("That the Securities Act contains no comparable venue provision seems more due to oversight or poor draftsmanship than to any conscious intent of the Congress to provide a more restricted venue under that Act. Certainly we can think of no reason why Congress might have wished venue to be more limited under the Securities Act than under the other federal securities laws."). The Court held that "under these provisions venue would be proper in the district where the scheme was hatched, and probably in any district where

---

[7] "The Securities Exchange Act, the Public Utility Holding Company Act, the Investment Company Act, and the Investment Advisers Act all contain venue provisions stating that criminal proceedings 'may be brought in the district where any act or transaction constituting the violation occurred.'" *Cashin*, 281 F.2d at 675.

acts in furtherance of the scheme took place." *Id.* at 675. Accordingly, the Second Circuit found that venue was proper both where false proxy statements had been prepared and circulated and from where mailings were sent to confirm purchases already induced by the defendants' deceit. *Id.* at 673–76. No other circuit court, however, has adopted this expansive application of the venue statute in cases prosecuted under § 77q(a).

This Court will not embrace the harmonization approach for which the Government advocates. *Cashin* construed the absence of a venue provision to be a drafting oversight by Congress. Unlike the Second Circuit in *Cashin*, this Court declines to act on such an assumption. The plain language of the statute includes no venue provision, and there is no such default provision in the Securities Act of 1933, by which § 77q(a) was created. Conversely, the 1934 Securities Exchange Act specifically provides that "[a]ny criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa. This Court will not infer congressional error in the drafting process and will respect the apparent distinction Congress sought to make between the 1933 Act and other securities regulations.

### b. Section 77q(a) is not a complete yet continuing offense

In suggesting that post-sale conduct qualifies as essential conduct, the Government is implicitly arguing that § 77q(a) is a complete yet continuing offense. This Court has already determined that § 77q(a) is a continuing offense under the second paragraph of 18 U.S.C. § 3237(a), but such a determination only means that § 77q(a) is an offense whose essential conduct elements can be performed in multiple districts. This does not necessarily mean that its legal lifespan continues after the essential conduct elements

have been completed.

Complete yet continuing offenses are not bound by any sort of transactional limitation; rather, due to the nature of these offenses, the ongoing conduct constitutes part of a single unit of prosecution. A few examples will clarify the types of proscribed conduct that fall into this subset of continuing offenses. Kidnaping, as discussed earlier, is completed at the point of abduction, but continues until the victim is free. *See Rodriguez-Moreno*, 526 U.S. at 281; *see also United States v. Lukashov*, 694 F.3d 1107, 1122 (9th Cir. 2012) (holding offense of sexual abuse of minor continued until minor was safely released). Similarly, the crime of being found in the United States after prior removal is completed when the alien first enters the United States, but continues until he is discovered by the immigration authorities. *See United States v. Ruelas-Arreguin*, 219 F.3d 1056, 1061 (9th Cir. 2000); *see also United States v. Cores*, 356 U.S. 405, 408–09 (1958) (holding prohibition against willfully remaining in United States imposed continuing duty on defendant to leave country and failure to leave at moment permit expired did not exhaust that duty). The Sixth Circuit, likewise, found that while the offense of willful failure to immediately notify the Coast Guard of a hazardous condition aboard a vessel is completed the instant the actor has knowledge of the condition, the violation continues until the Coast Guard receives such notification. *See United States v. Canal Barge Co.*, 631 F.3d 347, 351–52 (6th Cir. 2011).

Unlike these open-ended offenses, § 77q(a) contains a transactional limitation— only proscribing conduct in the offer or sale of a security. *See Harris*, 2013 U.S. Dist. LEXIS 11892, at *24–26. By the language of the statute, the offense does not continue

past the point of sale. Thus, § 77q(a) clearly does not fit in the category of complete yet continuing offenses.

### c. *Jefferson*'s analysis of wire and mail fraud suggests that the scheme to defraud is not an essential conduct element of § 77q(a)

In addition to the language limiting the offense under § 77q(a) to fraud in the offer or sale of a security, a number of circuit courts, including the Fourth Circuit, have found that the underlying fraudulent scheme does not constitute an essential conduct element of other fraud offenses, such as mail and wire fraud. A review of the essential conduct elements confirms that the variant of securities fraud addressed in § 77q(a) does not qualify as a complete yet continuing offense.

To determine the essential conduct elements, the Court must examine both the verbs and prepositional phrases of the statute. *United States v. Brennan*, 183 F.3d 139 (2d Cir. 1999). For § 77q(a), the elements of the offense are: (1) the offer or sale of securities; (2) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails; and, (3) engaging in fraud by any of the means identified in subsections (a)(1)–(3). Fraud is undoubtedly a critical element of the offense, and while it must attend essential conduct, it is not itself an essential conduct element. Rather, the essential conduct is the misuse of the mails or the means of interstate commerce. The other two elements specify the context in which use of the mails or the means of interstate commerce is prohibited.

The Government argues that under *Cashin* the scheme to defraud is the essential overarching conduct element and that any acts in furtherance of that scheme, including

15

post-sale lulling activities, are sufficient to establish venue. *Cashin* does suggest that certain post-sale activities may be sufficient to establish venue if such acts were in furtherance of the scheme to defraud. 281 F.2d at 675. In *Cashin*, however, the post-sale activity was the closely allied "use of the mails to confirm purchases already induced by the defendants' deceit." *Id.* at 674. Furthermore, the crux of the holding in *Cashin* was that certain pre-sale acts, specifically the preparation and circulation of false proxy statements, sufficed to establish venue. *Id.* at 676.

To augment its position, the Government offers two circuit court opinions holding that post-sale lulling activities constitute part of the ongoing scheme to defraud. *See United States v. Fishman*, 645 F.3d 1175 (10th Cir. 2011) (holding for purposes of mail or wire fraud, schemes to defraud can include lulling activities); *SEC v. Holschuh*, 694 F.2d 130 (7th Cir. 1982) (finding post-sale misrepresentations designed to lull investors were sufficient to prove intent to defraud in violation of § 17(a) of the Securities Act of 1933). Neither case squarely addresses the immediate issue of venue.

In contrast to the holding in *Cashin*, the Fourth Circuit has held that a scheme to defraud is not an essential conduct element for wire or mail fraud. *See Jefferson*, 674 F.3d at 366–67. For those crimes, the essential prohibited conduct is the misuse of the mails or wires. *Id.* (citing *Ramirez*, 420 F.3d at 144–45; *United States v. Pace*, 314 F.3d 344, 349 (9th Cir. 2002)) ("[T]he mailing or wire transmission itself . . . has consistently been viewed as the *actus reus* that is punishable by federal law."). While the prohibited conduct may further a scheme to defraud, the scheme to defraud itself is not the essential conduct. *Id.* at 367. The scheme to defraud supplies the *mens rea*, or requisite state of

mind element, distinguishing the offense from innocent conduct. *Ramirez*, 420 F.3d at 144. The scheme to defraud is not the offense that is punishable, but rather each mailing or wire transmission in furtherance of the scheme is a distinct, punishable offense. *Jefferson*, 674 F.3d at 367; *see also United States v. Wood*, 364 F.3d 704, 713 (6th Cir. 2004) ("[V]enue in a mail fraud case is limited to districts where the mail is deposited, received, or moves through, even if the fraud's core was elsewhere.").

In light of the analysis in *Jefferson*, *Ramirez*, and *Wood*, this Court concludes that the essential conduct prohibited by § 77q(a) is the misuse of the mails or the means of interstate commerce. The offer or sale and fraud requirements only establish the attendant circumstances under which the use of the mails or the means of interstate commerce is prohibited.

### d. This Court's prior determination of the scope of conduct covered by § 77q(a) in the limitations context is relevant and supports the conclusion that the offense is not a complete yet continuing one

The related analysis of § 77q(a) in both the multiplicity and statute of limitations contexts reinforces the conclusion that the scheme to defraud is not an essential conduct element. This Court and several circuit courts have held that under § 77q(a) each separate offer or sale of a security is a distinct chargeable offense, with the triggering conduct being the use of the mails or interstate commerce. *See Harris*, 2013 U.S. Dist. LEXIS 11892, at *22; *United States v. Schlei*, 122 F.3d 944, 978 (11th Cir. 1997); *United States v. Phillips*, 726 F.2d 417, 419 n.6 (8th Cir. 1984); *United States v. Waldman*, 579 F.2d 649, 654 (1st Cir. 1978); *United States v. Dioguardi*, 492 F.2d 70, 83 (2d Cir. 1974). Thus, this Court and several others have already rejected the interpretation of § 77q(a)

underpinning the holding in *Cashin* and the other cases cited by the Government.

The transactional focus of § 77q(a) indicates that the scheme to defraud is not the conduct that is being targeted. Rather, each fraudulent offer or sale is punishable, and the specific conduct giving rise to federal jurisdiction is the use of the mails or the means of interstate commerce. Thus, venue cannot be premised on post-sale lulling efforts because such conduct does not constitute an essential conduct element of the offense.

### C. Application to Counts Three and Four

In November 2010, Harris sent invitations to MFH shareholders, including Katie Ritter and Russell Carrier, requesting their attendance at a shareholders meeting in McLean, Virginia. Each received the mailing and travelled to the shareholders meeting, where Harris made further misrepresentations about the status of the patents and how investor funds were being used. The Government does not dispute that venue for Counts Three and Four was premised exclusively on the post-sale lulling activities occurring in the Eastern District of Virginia. While such post-sale efforts may be part of the overall scheme to defraud, the scheme and any acts in furtherance of it are not essential conduct elements of § 77q(a). Accordingly, venue cannot be based on such post-sale activity, and the Court must set aside Harris's convictions on Counts Three and Four.[8]

### III. CONCLUSION

For the reasons stated above, Harris's Renewed Motion for Judgment of Acquittal on Counts Three and Four will be granted, and his convictions for Counts Three and Four

---

[8] This result will not preclude these offenses from being considered as relevant conduct for sentencing purposes under United States Sentencing Guidelines § 1B1.3.

will be set aside.

An appropriate Order will accompany this Memorandum Opinion.

Date: **April 26, 2013**
Richmond, Virginia

/s/
Henry E. Hudson
United States District Judge