IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 3:12CR170–HEH |
| | ) | |
| MICHAEL F. HARRIS, | ) | |
| | ) | |
| Petitioner. | ) | |

**MEMORANDUM OPINION**
**(Denying 28 U.S.C. § 2255 Motion)**

Michael F. Harris, a federal inmate proceeding *pro se*, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 138).[1] In his § 2255 Motion, Harris lists the following three grounds for relief:

| | |
|---|---|
| Ground One: | "Central witness for the prosecution delineates victim investments with imperfect data, resulting in 'plain inadmissible error.'" (*Id.* at 4.) |
| Ground Two: | "Characterize it ineffective counsel or tactical strategy, the outgrowth is manifesto. This case at bar was devoid [of] sine quo [sic] non preservation, a 'good faith defense.'" (*Id.*) |
| Ground Three: | "With new affirmative evidence now germane, this Court is summoned to test the constitutionality of its imposed sanction of restitution to satisfy [*United States v.*] *Booker*[, 543 U.S. 220 (2005)]." (*Id.*) |

---

[1] The Court employs the pagination assigned to Harris's submissions by the CM/ECF docketing system, and corrects the capitalization, emphasis, and punctuation in quotations from Harris's submissions.

In a rambling, one-hundred and six page § 2255 Motion, Harris expands upon the above grounds. Broadly construing Harris's § 2255 Motion, the Court discerns the following six claims for relief:

> Claim One: Government witness Cindy Williamson's testimony was inadmissible. (*Id.* at 28–39.)
>
> Claim Two: Trial counsel was ineffective for failing to introduce evidence of Harris's other bank accounts to refute Ms. Williamson's testimony. (*Id.* at 35.)
>
> Claim Three: Appellate counsel rendered ineffective assistance when he: "rebuked any and all suggestions from Harris. He required four continuances. Harris received a draft of the brief only after he made numerous demands. . . . [Appellate counsel] never prepared a reply brief then wanted an additional $15,000 to file a Writ of Certiorari to the Supreme Court." (*Id.* at 47.)
>
> Claim Four: Trial counsel was ineffective for "never introduc[ing] a 'good faith defense'" (*id.* at 48), and "never request[ing] the trial court to give the 'good faith' instruction to the jury" (*id.* at 55).
>
> Claim Five: Harris's restitution order is unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005). (*Id.* at 58–59.)
>
> Claim Six: Trial counsel was ineffective for "never satisfactorily assert[ing] a Sixth Amendment requirement that a jury determine the issues surrounding restitution in the instant action." (*Id.* at 67.)

The Government has responded, asserting that Harris's claims lack merit. (ECF No. 146.) For the reasons set forth below, Harris's § 2255 Motion (ECF No. 138) will be denied.

## I. PROCEDURAL HISTORY

On October 15, 2012, a grand jury charged Harris with four counts of securities fraud, in violation of 15 U.S.C. §§ 77q(a) & 77x (Counts One through Four); three counts

of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Five through Seven); and one count of mail fraud, in violation of 18 U.S.C. § 1341 (Count Eight). (Indictment 5–14, ECF No. 3.) On December 12, 2012, Harris, through counsel, filed a motion to dismiss Counts One and Two of the Indictment, arguing that the statute of limitations had run on those counts. (ECF No. 22.) By Memorandum Opinion and Order entered on January 29, 2013, the Court granted Harris's motion and dismissed Counts One and Two. *United States v. Harris*, 919 F. Supp. 2d 702, 703 (E.D. Va. 2013).

On March 4, 2013, a jury found Harris guilty of the remaining counts (Counts Three through Eight) of the Indictment. (ECF No. 67, at 1–2.) Two days later, Harris, through counsel, filed a renewed motion for judgment of acquittal on Counts Three and Four due to lack of venue. (ECF No. 70.) By Memorandum Opinion and Order entered on April 26, 2013, the Court granted Harris's motion and dismissed Counts Three and Four. *United States v. Harris*, No. 3:12CR170–HEH, 2013 WL 1790140, at *1 (E.D. Va. Apr. 26, 2013).

On July 12, 2013, the Court entered judgment against Harris and sentenced him to 108 months of imprisonment. (J. 2, ECF No. 108.) On October 2, 2013, the Court entered a Restitution Order, sentencing Harris to pay restitution in the amount of $874,925.66. (ECF No. 130, at 1.) On direct appeal, the United States Court of Appeals for the Fourth Circuit affirmed Harris's conviction and sentence. *United States v. Harris*, 576 F. App'x 265, 266 (4th Cir. 2014). Harris did not file a petition for a writ of certiorari in the United States Supreme Court.

## II. SUMMARY OF EVIDENCE

The Fourth Circuit summarized the evidence of Harris's guilt as follows:

> [Harris] was the president, CEO, and principal shareholder of M.F. Harris Research ("MFH"), a company that was allegedly involved in researching a cure for HIV/AIDS. According to the evidence presented at trial, [Harris] claimed that MFH was developing a treatment for HIV/AIDS that involved using a hyperbaric chamber to introduce nitrogen into a patient's cells, which would combat the HIV/AIDS virus.
>
> Between 2005 and 2011, [Harris] solicited investments by selling shares of MFH stock for $1.00 a share. In soliciting these investments, [Harris] made a number of presentations in which he told potential investors that their money would be used by MFH to obtain the necessary patents, begin human trials of the hyperbaric chamber treatment, and continue research. From October 2005 through July 2011, [Harris] received approximately $900,000.00 in investments. Of that amount, no money was used for HIV/AIDS research, and only $54,787.24 was used to pay for patent fees. The Government presented evidence that the remaining investor funds were spent by [Harris] on personal expenses, including mortgage payments, vehicles, a gun collection, farm and horse expenses,[2] child support, and other personal purchases.

*United States v. Harris*, 576 F. App'x 265, 267 (4th Cir. 2014).

## III. SUBSTANTIVE CLAIMS

**B.    Claim One**

In Claim One, Harris contends that the testimony provided by Cindy Williamson, a financial analyst from the National White Collar Crime Center, was inadmissible at trial under Rule 402 of the Federal Rules of Evidence because it was "irrelevant." (§ 2255 Mot. 28, 39.) Harris alleges that her testimony was inadmissible because "she possessed only a portion of the pertinent subject matter" regarding Harris's accounts. (*Id.* at 39.)

---

[2] [Harris] was involved in competitive steeplechase horse racing, and the evidence at trial revealed that he spent investor funds on horse boarding and other farm-related expenses. In addition, [Harris] met several MFH investors at horse shows.

4

Rule 402 of the Federal Rules of Evidence provides that "[r]elevant evidence is admissible" unless provided otherwise under: (1) the Constitution; (2) a federal statute; (3) the Federal Rules of Evidence; or, (4) "other rules prescribed by the Supreme Court." Fed. R. Evid. 402. "Irrelevant evidence is not admissible." *Id.* "Evidence is relevant if: **(a)** it has any tendency to make a fact more or less probable than it would be without the evidence; and **(b)** the fact is of consequence in determining the action." Fed. R. Evid. 401. The district court has broad discretion to determine whether evidence is relevant. *United States v. Fernandez*, 913 F.2d 148, 154–55 (4th Cir. 1990). "Consequently, what constitutes 'relevant evidence' depends on the facts of the case, the nature of the claims, and the associated defenses to the claims." *Guerrero v. Deane*, No. 1:09cv1313 (JCC/TCB), 2012 WL 3834907, at *2 (E.D. Va. Sept. 4, 2012).

The Government prosecuted Harris on a theory that Harris falsely "represented that invested funds would largely be used to conduct . . . human trials and to apply for and obtain patents on the treatment in the United States, Canada, Europe, and Africa." (Indictment 2.) Harris received approximately $900.000.00 from investors. *Harris*, 576 F. App'x at 267. Ms. Williamson's testimony established that out of the $900,000.00, only $54,787.24 was spent on patent applications (Feb. 28, 2013 Tr. 992), and none was spent on research (Feb. 28, 2013 Tr. 1039). Harris fails to articulate how Ms. Williamson's testimony regarding his bank accounts and expenditures was not relevant to the issue of whether Harris intended to defraud investors. Accordingly, Claim One will be dismissed. To the extent that Harris faults counsel for failing to question Williamson about Harris's other bank accounts, the Court addresses that argument *infra* in Part IV.A.

## C. Claim Five

In Claim Five, Harris alleges that the Restitution Order entered by the Court is unconstitutional under *United States v. Booker*, 543 U.S. 220 (2005). (§ 2255 Mot. 58–59.) Specifically, Harris contends that the Restitution Order is unconstitutional because "[t]here was no jury involvement whatsoever in fixing Harris' restitution obligation." (*Id.* at 67.)

Contrary to Harris's assertion, restitution orders "are outside the scope of a § 2255 review." *United States v. Runnells*, 36 F. Supp. 2d 696, 700 (E.D. Va. 1998) (citations omitted); *see Blaik v. United States*, 161 F.3d 1341, 1342–43 (11th Cir. 1998) (explaining that a § 2255 motion may not be used to challenge fines or restitution orders). Neither a fine nor an order of restitution amounts to custody sufficient to meet the "in custody" requirement of § 2255. *See Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009); *Kaminiski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *Blaik*, 161 F.3d at 1343. Thus, the Court may not review Harris's Restitution Order through § 2255.[3]

Moreover, even if Harris could collaterally challenge his Restitution Order, his claim that his Restitution Order violated *Booker*[4] because he failed to receive a jury

---

[3] It is unclear whether an inmate may challenge a restitution order under 28 U.S.C. § 2241. *Compare Arnaiz v. Warden, Fed. Satellite Low*, 594 F.3d 1326, 1329–30 (11th Cir. 2010) (explaining that a restitution order may not be collaterally attacked though § 2255 or § 2241 because a "contrary rule would result in incongruent access to the courts"), *with Fontanez v. O'Brien*, 807 F.3d 84, 87 (4th Cir. 2015) (finding that a "challenge to the BOP's administration of [restitution payments] is a challenge to the 'execution' of a sentence that is cognizable under 28 U.S.C. § 2241").

[4] Prior to its decision in *Booker*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v.*

6

determination of the restitution amount, has been squarely rejected by the United States Court of Appeals for the Fourth Circuit. *See United States v. Day*, 700 F.3d 713, 732 (4th Cir. 2012). The Fourth Circuit explained:

> *[T]here is no prescribed statutory maximum* in the restitution context; the amount of restitution that a court may order is instead indeterminate and varies based on the amount of damage and injury caused by the offense. *See* 18 U.S.C. §§ 3663(b), 3663A(b). As a consequence, the rule of *Apprendi* is simply not implicated to begin with by a trial court's entry of restitution.

*Id.* Accordingly, Claim Five lacks merit and will be dismissed.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and second that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

---

*New Jersey*, 530 U.S. 466, 490 (2000). Subsequently, the Supreme Court revisited *Apprendi*, clarifying that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely v. Washington*, 542 U.S. 296, 303 (2004). *Booker* held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244.

outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A. Claim Two

In Claim Two, Harris alleges that trial counsel was ineffective for failing to introduce evidence of Harris's other bank accounts to refute Cindy Williamson's testimony. (§ 2255 Mot. 35.) According to Harris, contrary to Ms. Williamson's testimony, he "maintained not one business account but two; he retained not one personal account but three." (*Id.* at 34.)[5] For example, Harris argues that Ms. Williamson "included no critical data from Sparkasse Bank in Germany where Harris held one of his offshore accounts." (*Id.* at 36.) Harris contends that information regarding his other bank accounts "would have dramatically altered the result of [Ms. Williamson's] analysis." (*Id.* at 39.) Harris apparently believes that evidence regarding his other bank accounts would have demonstrated that he lacked an intent to defraud investors regarding his use of their investment money.

During Harris's trial, Ms. Williamson testified that her role was to organize Harris's business and personal financial records and "put it in a [database] that would give . . . a better understanding of . . . [h]ow the money was moving around" between accounts. (Feb. 28, 2013 Tr. 951.) While analyzing Harris's accounts, Ms. Williamson saw a pattern of investor money being deposited in both Harris's business and personal

---

[5] Ms. Williamson testified that she analyzed information from bank accounts held by Harris at "Wachovia, Wells Fargo, Bank of America, Planters (Stellar One), and BB&T." (Feb. 28, 2013 Tr. 952.)

8

accounts. (Feb. 28, 2013 Tr. 969.) Ms. Williamson also found "some instances where an investor check was put on the deposit ticket, cash came back out to the depositor, and the net went into the bank." (Feb. 28, 2013 Tr. 1027–28.) For example, one investor gave Harris a check for $5,000.00; however, when he deposited the check, Harris withdrew $2,000.00 in cash. (Feb. 28, 2013 Tr. 1028.) Ms. Williamson testified that she and other analysts "decided [Harris] treated . . . his personal account as his business account, and his business account as the personal account." (Feb. 28, 2013 Tr. 969–70.) Therefore, for purposes of her analysis, the accounts were added "all together." (Feb. 28, 2013 Tr. 970.) Overall, Ms. Williamson testified that out of the total amount of money provided by investors, only $54,787.24 was spent on patent applications (Feb. 28, 2013 Tr. 992), and none was spent on research. (Feb. 28, 2013 Tr. 1039.) Ms. Williamson also testified that she found many expenditures by Harris for items such as knives, a drill press, horse equipment, and tools. (Feb. 28, 2013 Tr. 1076–77.) Ms. Williamson's testimony regarding Harris's accounts and expenditures was therefore relevant to the Government's theory that Harris had defrauded investors by misrepresenting how their investment money would be used.

On cross-examination, counsel attempted to discredit Ms. Williamson's analysis as being incomplete by highlighting the fact that Ms. Williamson could not easily classify all of Harris's expenses. Ms. Williamson readily admitted that she could not determine whether some of Harris's expenses, such as vehicle and housing expenses, were business-related or were personal expenditures by Harris. (Feb. 28, 2013 Tr. 1067–68.) Ms.

Williamson admitted that her analysis did not include any cash spent by Harris, as well as any travel expenses. (Feb. 28, 2013 Tr. 1066–67.)

While counsel did not introduce evidence of Harris's other bank accounts during his cross-examination of Ms. Williamson, the Court fails to discern any deficiency of counsel or resulting prejudice. First, Harris fails to indicate whether counsel was even aware of his other bank accounts. Harris also fails to proffer with any specificity what these other accounts would have shown. At most, Harris claims the introduction of these accounts "would have dramatically altered" the analysis. (§ 2255 Mot. 39.) Second, cross-examination of witnesses is a matter of trial strategy. *See Sallie v. North Carolina*, 587 F.2d 636, 640 (4th Cir. 1978). Harris fails to demonstrate that counsel's strategy for cross-examining Ms. Williamson by discrediting her analysis as being incomplete fell outside of "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, given the overwhelming evidence against Harris, including the evidence regarding his use of the investor money, Harris fails to demonstrate that he was prejudiced by counsel's decision not to introduce evidence of Harris's other bank accounts. Accordingly, Claim Two will be dismissed.

### B. Claim Three

In Claim Three, Harris contends that appellate counsel rendered ineffective assistance when he "rebuked any and all suggestions from Harris. He required four continuances. Harris received a draft of the brief only after he made numerous demands. . . . [Appellate counsel] never prepared a reply brief then wanted an additional $15,000 to file a Writ of Certiorari to the Supreme Court." (§ 2255 Mot. 47.)

10

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." *Bell*, 236 F.3d at 164 (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As an initial matter, Harris fails to identify with the requisite specificity which suggestions appellate counsel allegedly rebuked. Harris's conclusory allegation that "counsel rebuked any and all suggestions" lacks any factual support, and, thus, fails to establish any deficiency of counsel or resulting prejudice. *See Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations").

With respect to Harris's conclusory assertions regarding counsel's receipt of four continuances and his failure to provide a copy of the brief to Harris until Harris asked for it, Harris has not detailed, and the Court cannot discern, how counsel's actions prejudiced

his appeal in any way. Moreover, with respect to Harris's assertion that counsel failed to file a reply brief, Harris fails to demonstrate any prejudice. Generally, an appellant cannot raise a new issue for the first time in his or her reply brief. *See United States v. Brooks*, 524 F.3d 549, 556 & n.11 (4th Cir. 2008) (citing *Yousefi v. INS*, 260 F.3d 318, 326 (4th Cir. 2001); *Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n.6 (4th Cir. 1999)) (explaining that an appellant abandons an argument "on appeal raised for the first time in [a] reply brief by failing to raise it in [the] opening brief"). Therefore, appellate counsel would have been precluded from raising any new issues in a reply brief and would have been limited to replying to the arguments raised in the Government's response. Harris simply has not demonstrated a reasonable probability that his appeal would have had a different result had counsel filed a reply brief, not asked for four continuances, and had provided a copy of the brief to Harris at an earlier time. *See Bell*, 236 F.3d at 164 (citing *Strickland*, 466 U.S. at 688, 694).

With respect to Harris's argument that counsel failed to file a petition for a writ of certiorari in the Supreme Court, the record demonstrates that Harris himself informed appellate counsel that he did not wish to file a petition. (*See* Gov't's Resp., Ex. 1 at 2, ECF No. 146–1.) Moreover, to the extent that Harris asserts that counsel was ineffective for failing to file the petition, Harris had no constitutional right to the assistance of counsel in filing a petition for a writ of certiorari. *See Wainwright v. Torna*, 455 U.S. 586, 587–88 (1982); *Ross v. Moffitt*, 417 U.S. 600, 616–18 (1974). "[Harris] could have pursued a writ of certiorari on his own, but he did not do so." *United States v. McCall*,

Nos. 3:10CR170–15–HEH, 3:13CV479–HEH, 2014 WL 4292828, at *5 (E.D. Va. Aug. 29, 2014).

Harris fails to demonstrate deficient performance and resulting prejudice from the actions of appellate counsel. Therefore, Claim Three will be dismissed.

### C. Claim Four

In Claim Four, Harris contends that trial counsel was ineffective for "never introduc[ing] a 'good faith defense.'" (§ 2255 Mot. 48.) He also asserts that counsel "never requested the trial court to give the 'good faith' instruction to the jury. (*Id.* at 55.) Harris's claim is clearly belied by the record.

Contrary to Harris's assertion, prior to trial, counsel for Harris submitted proposed jury instructions, which included a proposed good faith instruction. (ECF No. 41, at 19–20.) The Court adopted counsel's instruction and instructed the jury as follows:

> The "*good faith*" of Defendant Michael Harris is a complete defense to the charges of securities fraud, wire fraud, and mail fraud contained in Counts Three through Eight of the Indictment because good faith on the part of the defendant is inconsistent with the intent to defraud alleged in those charges.
> A person who acts, or causes another person to act, on a belief or an opinion honestly held is not punishable under this statute merely because the belief or opinion turns out to be inaccurate, incorrect, or wrong. An honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct.
> A defendant does not act in "*good faith*" if, even though he honestly holds a certain opinion or belief, that the defendant also knowingly makes false or fraudulent statements, representations, or promises to others.
> The law is written to subject to criminal punishment only those people who knowingly defraud.
> While the term "*good faith*" has no precise definition, it encompasses, among other things, a belief or opinion honestly held, an absence of malice or ill will, and an intention to avoid taking unfair advantage of another.

13

> In determining whether or not the government has proven that Mr. Harris acted with the intent to defraud or whether he acted in good faith, the jury must consider all of the evidence received in the case bearing on the defendant's state of mind.
>
> The burden of proving good faith does not rest with the defendant because the defendant does not have any obligation to prove anything in this case. It is the government's burden to prove to you, beyond a reasonable doubt, that Mr. Harris acted with the intent to defraud.
>
> If the evidence in the case leaves the jury with a reasonable doubt as to whether Mr. Harris acted with the intent to defraud, the jury must acquit Mr. Harris.

(Mar. 1, 2013 Tr. 1194–95, ECF No. 124.) Thus, the record clearly establishes that counsel requested a good faith instruction, the Court gave the jury that instruction, and Harris's allegation is patently false. This portion of Claim Four lacks merit.

Moreover, a good faith defense and Harris's lack of intent to defraud played prominently in counsel's arguments to the jury. For example, during opening statements, counsel asked the jury to acquit Harris because "he never had the intent to defraud anyone. He felt that everyone who purchased shares in his company was receiving something of value, something that he put his life's work into." (Feb. 25, 2013 Tr. 105, ECF No. 106.) Counsel also argued that the Government could not prove that Harris's "false statements were made with the intent to defraud." (Feb. 25, 2013 Tr. 112.) Counsel concluded his opening statement by explaining that, "in the end what we will show you is that Michael Harris never had any intent to defraud." (Feb. 25, 2013 Tr. 119.) Again during closing arguments, counsel argued that "when Mr. Harris was working for the company, he had a good faith belief that he was moving the company forward." (Mar. 3, 2013 Tr. 1232, ECF No. 124.) Counsel argued that Harris was simply "not a good businessman" (Mar. 3, 2013 Tr. 1235), and that he was "certainly not

blameless in why the company never really got all the way off the ground, but he didn't act with the intent to defraud or cheat anybody, and he didn't act criminally" (Mar. 3, 2013 Tr. 1236).

Thus, Harris's claim that "in the instant action, a 'good faith' defense was conspicuously absent" (§ 2255 Mot. 54) is wholly unsupported by the record. Counsel cannot be faulted for the jury's decision to reject Harris's defense of good faith. Because Harris has failed to demonstrate deficient performance of counsel and resulting prejudice, Claim Four will be dismissed.

### C. Claim Six

In Claim Six, Harris contends that counsel "never satisfactorily asserted a Sixth Amendment requirement that a jury determine the issues surrounding restitution in the instant action." (*Id.* at 67.) Essentially, Harris faults counsel for not raising the argument that Harris raises in Claim Five, that his restitution order violated *Booker* because he failed to receive a jury determination of the appropriate restitution amount.

To the extent Harris's claim is cognizable under § 2255, it lacks merit. As discussed *supra* in Part III.C, Harris's Restitution Order is not unconstitutional under *Booker*. *See Day*, 700 F.3d at 732. Counsel cannot be ineffective for failing to raise a meritless claim. *See United States v. Moore*, 934 F. Supp. 724, 731 (E.D. Va. 1996). Because Harris has failed to demonstrate deficient performance and resulting prejudice, Claim Six will be dismissed.

## V. OUTSTANDING MOTIONS

Harris has filed a "Motion for Summary Judgment as Matter of Law & Violation of Procedural Due Process" ("Motion for Summary Judgment," ECF No. 142), "Motion to Strike Respondent's 'Moot' Answer to § 2255 Due To Established Rules and Matter of Law" ("Motion to Strike," ECF No. 148), and a "Motion for Default Judgment by Nil Dicit Pursuant to Rule 5(b)(2)" ("Motion for Default Judgment," ECF No. 149). Because the Court has determined that Harris's claims lack merit, these Motions (ECF Nos. 142, 148, 149) will be denied.

## VI. CONCLUSION

For the foregoing reasons, Harris's § 2255 Motion (ECF No. 138) will be denied. Harris's Motion for Summary Judgment (ECF No. 142), Motion to Strike (ECF No. 148), and Motion for Default Judgment (ECF No. 149) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Harris and counsel of record.

It is so ORDERED.

_____/s/_____
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: May 9, 2016
Richmond, Virginia